STATE OF NORTH CAROLINA v. KAREEM ABDU ALEEM AND RUBEN BENJAMIN SNIPES

No. 8010SC449

(Filed 4 November 1980)

1. **Insurance § 112.1; Conspiracy § 6– filing false insurance claim – conspiracy to do so – sufficiency of evidence**

   Evidence was sufficient for the jury in a prosecution for filing a false insurance claim and conspiracy to do so where it tended to show that defendants appeared individually and together to file repeated claims for identical damage to the same automobile; there were inexplicable frequent transfers of title to the car; and the in-court identification of the two defendants and testimony by several witnesses was adequate to link defendants to the illicit acts.

2. **Criminal Law § 99.6– clarification of witness's testimony – no expression of opinion**

   The trial judge did not make statements in the presence of the jury tending to add to the probative force of a witness's testimony, thereby expressing an opinion as to the credibility of the witness, where the trial judge merely clarified what a witness had already stated, that he did not recognize either defendant, but knew one defendant by name.

3. **Criminal Law § 68– filing false insurance claim – release and cash settlement request – admissibility to show identity of defendant**

   In a prosecution for filing a false insurance claim on an automobile and conspiracy to do so, the trial court did not err in admitting into evidence a release and a cash settlement request showing there was no lien on the car and that coverage would remain in force, since the exhibit was circumstantially relevant in establishing the identity of one defendant as one of the conspirators.

APPEAL by defendants from *Hobgood (Hamilton H.), Judge.* Judgments entered 19 December 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 7 October 1980.

Defendants, Kareem Abdu Aleem and Ruben Benjamin Snipes, who are brothers, were tried jointly. Defendant Aleem was charged by indictment with conspiring, with defendant Snipes and others, to present a fraudulent insurance claim to the United States Liability Insurance Company for payment of property damage to a 1972 Chevrolet Monte Carlo automobile. Aleem pleaded not guilty. The jury returned a verdict of guilty as charged. A judgment of imprisonment was entered and defendant Aleem appeals.

Defendant Snipes was charged by indictments for insurance fraud and for conspiring, with defendant Aleem and others, to present a fraudulent insurance claim. Snipes pleaded not guilty. The jury found him guilty on both charges and judgments of imprisonment were entered. Defendant Snipes appeals.

The state's evidence tends to show that a 1972 Chevrolet Monte Carlo was purchased by a Richard Macke in January 1978. In September of that year Macke was involved in an accident which crushed the front end of the automobile. Macke subsequently sold the vehicle in a damaged condition. The automobile was later titled, at various times, in the name of each of the defendants, a third brother, Barry Lee Snipes, and others.

On 7 November 1978, the district claims manager of Nationwide Insurance Company, William S. Howard, went to identify and inspect the 1972 Monte Carlo, which was insured in the name of Kareem Abdu Aleem. The vehicle had damage to the front end, and Aleem had filed a claim under the policy. A claims adjuster for the insurance company met with a man who identified himself as Aleem and settled the claim for $1,150 plus towing expenses.

A secretary for Long's Insurance Agency, Sylvia Solomon, took an application for insurance on the automobile from a person identified as Barry Lee Snipes on 18 December 1978. On 28 December 1978, Barry Lee Snipes presented a claim and was reimbursed for repair to the windshield of the insured vehicle. On 15 January 1979, a person who identified himself as Barry Lee Snipes came to the office to make a claim for damage to the front end of the vehicle. Witness Solomon made an in-court identification of Aleem as the person who in fact made the claim. Aleem signed the claim as Barry Lee Snipes and the insurance company paid him $1,033.50.

Lawrence Boles, manager of Highway Used Parts, testified that a man identified in court as defendant Aleem had represented himself to be "Snipes" when he came to Boles's garage to inquire about storing a car in early January 1979. The same man later delivered the car to the garage and picked it up with a wrecker about twelve days later. The front end of the automobile was wrecked when it was brought in and taken away.

Edwin Kirn, an insurance adjuster, recalled two claims on the vehicle in question. The first claim was submitted on 22 January 1979 on a policy issued to Barry Lee Snipes. Kirn inspected the automobile at Highway Auto Used Parts. He had a telephone conversation with a person who identified himself as Barry Lee Snipes and agreed to pay Snipes $1,068.50. A proof of loss statement signed "Barry Snipes" was returned to Kirn's office. A secretary from that office identified the draft used in settlement of the claim. She testified that she delivered the draft on 5 February 1979 to a person who identified himself as Barry Lee Snipes, but she did not recognize that person in the courtroom.

An insurance agent and broker, Billy B. Jennings, identified defendants Snipes and Aleem as persons who came to his office on 16 March 1979 to apply for insurance on the 1972 Monte Carlo. Jennings transferred the automobile title from Aleem to Snipes on that occasion and issued collision insurance to Snipes from the United States Liability Insurance Company. On 23 March 1979 defendant Snipes filed a notice of loss document for damage to the insured vehicle.

Upon redirect examination, Edwin Kirn testified that he was again assigned to investigate loss on the 1972 Monte Carlo on 28 March 1979. He recognized it as the same vehicle and the same damage as the claim he had previously investigated and paid. He reported the situation to his boss, Harry Eaton. Eaton testified that he spoke on the telephone to a man who identified himself as Ruben Benjamin Snipes, and requested Snipes to come to Raleigh to make a statement regarding his claim. Snipes agreed and made a signed statement which said he had acquired the automobile in good condition. Snipes described the circumstances surrounding the damage he claimed he had recently incurred. Eaton contacted the North Carolina Department of Insurance, requesting its assistance in investigating the matter. After numerous telephone conversations with defendant Snipes, Eaton informed him that the claim would not be honored because Eaton knew what was going on. He told Snipes to have his brother Barry return the $1,033.50 previously paid for the same damage. That amount was later returned.

An employee of the adjustment agency, Charles Thompson, testified that a man who identified himself as Ruben Snipes

returned the $1,033.50 to him and signed a receipt. After receiving a signed statement from Snipes that he wished to withdraw his claim, Thompson drew up a withdrawal document.

An investigator for the Department of Insurance testified as to his investigation of the claims on the automobile in question. Six claims were filed by the three brothers between October 1978 and March 1979.

Photographs of the 1972 Monte Carlo, taken during the various investigations, were entered as exhibits.

Defendants presented no evidence. Each defendant made a motion for nonsuit at the close of the state's evidence, which the court overruled. After the verdicts and judgments, defendants' motions to set aside the verdicts, for new trial, and in arrest of judgment were also denied.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Hatch, Little, Bunn, Jones, Few & Berry, by E. Richard Jones, Jr., for defendant Aleem.*

*J. Franklin Jackson for defendant Snipes.*

MARTIN (Harry C.), Judge.

Both defendants assign as error the trial court's denial of their motion for nonsuit on the grounds of insufficiency of evidence to sustain a verdict. Defendants contend that the evidence was insufficient to link defendants to the transactions which gave rise to the charge of conspiracy, that there was insufficient proof to show an agreement between the parties, and that the circumstantial evidence offered by the state did not point unerringly to the existence of a conspiracy.

When the state attempts to prove a criminal conspiracy, "it must show an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way." *State v. Jones,* 47 N.C. App. 554, 559, 268 S.E. 2d 6, 10 (1980). *Accord, State v. Parker,* 234 N.C. 236, 66, S.E. 2d 907 (1951); *State v. Whiteside,* 204 N.C. 710, 169 S.E. 711 (1933); *State v. Wrenn,* 198 N.C. 260, 151 S.E. 261 (1930).

An agreement between the parties charged is an essential element of conspiracy. In *State v. Phillips,* 240 N.C. 516, 521, 82

S.E. 2d 762, 766 (1954), the Supreme Court of North Carolina quoted the language of the Supreme Court of Indiana in *Johnson v. State,* 208 Ind. 89, 194 N.E. 619:

> "There must be an agreement or joint assent of the minds of two or more before there can be a conspiracy. Such agreement or joint assent of the minds need not be proved by direct evidence. ... There must be, however, an agreement, and there must be such evidence to prove the agreement directly or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion, nor does evidence of mere relationship between the parties or association show a conspiracy."

Direct proof of conspiracy is rarely available, so the crime must generally be proved by circumstantial evidence. *State v. Cooley,* 47 N.C. App. 376, 268 S.E. 2d 87, *disc. rev. denied, appeal dismissed,* 301 N.C. 96 (1980). Because the presence of a common design is often extremely difficult to detect, a conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside, supra* at 712, 169 S.E. at 712. Factors which may be considered include the results accomplished, the situation of the parties, their antecedent relationships, the surrounding circumstances and the inferences legitimately deducible therefrom. *Id.* The circumstantial evidence must point unerringly to the illegal combination, *Wrenn, supra,* and create in the minds of the jurors a moral certainty of the defendants' guilt, to the exclusion of any other reasonable hypothesis. *Parker, supra. Accord, State v. McCullough,* 244 N.C. 11, 92 S.E. 2d 389 (1956). *See also, State v. Webb,* 233 N.C. 382, 64 S.E. 2d 268 (1951); *State v. Miller,* 220 N.C. 660, 18 S.E. 2d 143 (1942); *State v. Madden,* 212 N.C. 56, 192 S.E. 859 (1937); *State v. Stiwinter,* 211 N.C. 278, 189 S.E. 868 (1937).

[1] In the case *sub judice* there was sufficient evidence to lead the jury to the conclusion that defendant Snipes was guilty of the crime of filing a false insurance claim and that both Snipes and Aleem were guilty of conspiring to so do. The state presented evidence of active participation by the defendants in transactions that could not arguably appear innocent. Their appearing individually and together to file repeated claims for identical damage to the same automobile, along with inexpli-

cable frequent title transfers, constitutes evidence that would impute wrongdoing. The in-court identification of the two brothers and testimony by several witnesses is adequate to link defendants to the illicit acts, negating their argument that guilt may have been attributed solely because of their relationship with each other.

"Upon motion for a nonsuit in a criminal action, the court must consider the evidence in the light most favorable to the State, and resolve all contradictions and discrepancies in its favor, giving it the benefit of every reasonable inference which can be drawn from the evidence." *State v. Cooley, supra* at 390-91, 268 S.E. 2d at 96. Defendants' motions for nonsuit were properly denied.

[2] Defendants' second assignment of error is that the judge made statements in the presence of the jury tending to add to the probative force of a witness's testimony, thereby expressing an opinion as to the credibility of the witness. The incident to which defendants except occurred during the cross-examination of Jerry Thompson Dunn:

> I talked to Mr. Aleem at my office in Burlington. As to which one of these three men I did talk to, I wouldn't recall really.
>
> Q. You don't know?
>
> COURT: He knows a man by the name, that gave his name as Kareem Abdu.

Defendants argue that "[t]he Court, in effect, provided a positive identification of the appellant where none existed," and added credibility to the witness. Defendants, in their briefs, correctly cite statutes and cases supporting the rule which prohibits a judge from expressing opinion as to the credibility of a witness. However, in this instance Judge Hobgood merely clarified what the witness had already stated, that he did not recognize either defendant, but knew Aleem only by name. A judge may question a witness to clarify his testimony and to provide the jury with guidance in their considerations. *See State v. Alston,* 38 N.C. App. 219, 247 S.E. 2d 726 (1978), *cert. denied,* 296 N.C. 586 (1979); *State v. White,* 37 N.C. App. 394, 246 S.E. 2d 71 (1978). It can hardly be considered prejudicial when the court intervenes slightly to interpret the examination of a

Bank v. Insurance Co.

witness to ensure that the jury understands that the testimony was only a name recognition of a defendant, not a personal nor in-court identification. This assignment of error is overruled.

[3] Finally, defendants argue it was erroneous to admit into evidence state's Exhibit Number 11, "a release in the amount of $1,198.00 and a cash settlement request showing there is no lien on the car and the coverage will remain in force." Defendants contend that the exhibit was irrelevant and prejudicial. We find no merit in defendants' argument. The document was signed in the name of Kareem Abdu Aleem by an individual identifying himself as the same. The exhibit is circumstantially relevant in establishing the identity of defendant Aleem as one of the conspirators. "[E]vidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." 1 Stansbury's N.C. Evidence § 77 (Brandis rev. 1973). Identity may be proved by circumstantial evidence in the same manner as other facts. *See State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970), *rev'd death penalty,* 403 U.S. 948, 29 L. Ed. 2d 860 (1971). Defendants make no showing that the document was unfairly prejudicial. Because of its relevancy, it was properly admitted into evidence.

We find that defendants received a trial free of prejudicial error.

No error.

Judges HEDRICK and MARTIN (Robert M.) concur.