STATE OF NORTH CAROLINA v. CHONG SUN FRANCE, DEFENDANT

No. 884SC818

(Filed 6 June 1989)

**1. Criminal Law § 75.23 — statements to television crew — admission not unfairly prejudicial**

Evidence of defendant's statements to a television crew as she was being transported from the police station to the county jail after her arrest, including statements that she had killed her son and was crazy, was not unfairly prejudicial so as to require its exclusion under N.C.G.S. § 8C-1, Rule 403 where an officer had testified previously that defendant stated that she "killed him," the officer described defendant as "very hysterical and hateful" in her dealings with police officers at the scene, and other witnesses gave testimony to the effect that the child's death was caused by putting him in a dresser drawer and closing it.

**2. Homicide § 21.7— second degree murder—child abuse—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution of defendant for second degree murder and felonious child abuse of her son where it tended to show that defendant locked the twenty-nine-month-old victim and his fifteen-month-old sister in the bedroom of her apartment when she went to work; the son was dead when she returned from work; medical and scientific evidence indicated that the child died from asphyxiation rather than from crushing injuries which would be expected if a television set and dresser had fallen on the child as described by defendant; and the child's asphyxiation could have been caused by putting him in a dresser drawer and closing it.

**3. Homicide § 15.5— cause of death—expert testimony—personal knowledge**

A physician had sufficient personal knowledge to state his opinion as to whether the death of a child could have been caused by a television set and a dresser falling on him where the physician conducted the autopsy on the child and personally observed the television set, the dresser, and reenactment tests performed by the police department and a city engineer. N.C.G.S. § 8C-1, Rule 703.

APPEAL by defendant from *Reid (David E., Jr.), Judge*. Judgment entered 21 December 1987 in Superior Court, ONSLOW County. Heard in the Court of Appeals 22 February 1989.

Defendant was found guilty by a jury of second degree murder and felonious child abuse. The trial court arrested judgment in the felonious child abuse case and sentenced defendant to twenty years for the second degree murder conviction. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Philip A. Telfer, for the State.*

*Edward G. Bailey for defendant-appellant.*

LEWIS, Judge.

Defendant brings forward four assignments of error. First, she contends the trial court erred in allowing a police detective to testify regarding defendant's statements recorded by a television

STATE v. FRANCE

[94 N.C. App. 72 (1989)]

news crew. Second, defendant assigns error to the denial of her motion to dismiss the charges. Finally, defendant assigns error to the trial court allowing a doctor to answer two questions regarding the cause of death. We have reviewed defendant's assignments of error and conclude she received a fair trial, free from prejudicial error.

The State's evidence showed that upon arrival at defendant's motel apartment around 3:25 a.m. on 28 May 1987, Officer Fisher of the Jacksonville Police Department found the body of defendant's two and one-half year old son, Moses, lying on the bed. Officer Fisher and Sergeant Cobun testified that the television set was on the dresser and pieces of glass from a mirror were in the carpet and in a bag in the kitchen. Defendant told police officers that she fed Moses and his 15-month-old sister, Esther, around 6:30 p.m. on 27 May. After feeding the children, she went to work. She left the children alone in the bedroom and locked the bedroom door so the children would not go in the kitchen and hurt themselves. Only defendant and the two children lived in the apartment. Defendant said that when she returned home around 2:00 a.m. on 28 May, she found Esther asleep on the bed. The dresser and television set were overturned and Moses was lying on the floor partially inside the second dresser drawer with the television set on top of him. She picked up Moses and put him on the bed. Then she put the television set and dresser back in place and cleaned up the room. She waited a while before calling the police because she did not know what to do. Defendant testified in her own behalf to these same essential facts.

The State's evidence further showed that Moses died of asphyxiation as the result of compression of his abdomen and chest. Based on information that Moses ate dinner at 6:30 p.m., the doctor performing the autopsy, Dr. Gable, estimated that Moses died between 6:30 p.m. and 7:00 p.m. on 27 May. On cross-examination, Dr. Gable testified Moses may have died as late as 7:30 p.m. Dr. Gable testified that in his opinion, the television set and dresser falling on the child would have produced crushing-type injuries. Moses' body had no crushing-type injuries but only pressure-type injuries. There were no abnormalities of the bones. In Dr. Gable's opinion, Moses' death could have been caused by closing him up in a dresser drawer. Dr. Gable could not determine whether the pressure-type injuries occurred before or after Moses' death.

## STATE v. FRANCE

[94 N.C. App. 72 (1989)]

Both the State and defendant put on extensive evidence of reenactment experiments as to the possibility of a 28-pound child pulling over the television set and dresser. The State presented without objection evidence of reenactment tests performed by the Jacksonville City Engineer and police officers. The engineer testified that in his opinion a child of Moses' weight and age could not have pulled over the dresser with the television set sitting on it. Defendant's expert engineer testified without objection that in his reenactment test a child of similar weight and age standing on a chair in front of the dresser did move the television set across the top of the dresser.

The evidence showed that Moses was two years, five months old at his death. He weighed 28 pounds and was 38 inches (three feet two inches) tall. The dresser was 33½ inches (two feet nine and one-half inches) in height, 19 inches (one foot seven inches) deep, and weighed 99 pounds. With the television set on it, the dresser and the television set weighed 152 pounds. The top of the second dresser drawer was 27¾ inches (two feet three and three-fourths inches) from the floor.

The State's theory of the case is that Moses died from asphyxiation after defendant put Moses in one of the dresser drawers and closed it. Further, she may have placed the television set on Moses' chest and abdomen after Moses was dead. Defendant's theory is that Moses climbed into the second dresser drawer and caused the television set and dresser to fall over and pin him underneath.

[1] Defendant first assigns error to certain testimony of Detective Shingleton. After defendant's arrest, a local television station recorded defendant's statements to the press while she was in custody. Concluding that the prejudicial effect of a kicking episode on the tape would outweigh its probative value, the trial court granted defendant's motion *in limine* to prohibit showing the videotape to the jury. However, the court allowed Detective Shingleton to testify that defendant made the following statements which were recorded by the television crew: "I did it. I did it. Okay, you stupid idiot. He thinks I did it, hunh?" and "You guys are sick. Why don't you get out of here? Can you kill your son, hunh? Can you kill your son? I'm crazy. You know I killed my son. I'm crazy." Detective Shingleton testified defendant made these statements as she was being transported from the police station to the county

jail after her arrest. She was under arrest and in custody but the statements were made without questioning or interrogation from any law enforcement personnel. On cross-examination, the detective described defendant as "angry," "mad," and "crying without tears" when she made the statements.

Defendant contends the evidence should have been excluded under G.S. 8C-1, Rule 403 as it caused "unfair prejudice." We disagree. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." G.S. 8C-1, Rule 403. " 'Unfair prejudice,' as used in Rule 403, means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.' " *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E. 2d 350, 357 (1986), *quoting* Commentary, G.S. 8C-1, Rule 403 (Cum. Supp. 1985). "Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect. Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree." *State v. Mercer*, 317 N.C. 87, 93-94, 343 S.E. 2d 885, 889 (1986). Whether to exclude evidence under Rule 403 is within the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986). In this case, the evidence of defendant's statements on the videotape are prejudicial to defendant's case; the detective testified that defendant said she killed her son. However, we cannot say the evidence is *unfairly* prejudicial. Officer Fisher had previously testified without objection that defendant stated "It's my fault. I killed him." Officer Fisher described defendant as "very hysterical and hateful" in her dealings with the police officers at the scene. There was also testimony from the State's other witnesses to the effect that Moses' death was caused by putting him in the dresser drawer and closing it. The trial court did not err in admitting the detective's testimony. This assignment of error is overruled.

[2] Defendant's second assignment of error is to the denial of her motion to dismiss at the close of all the evidence. Defendant contends the evidence presented at trial was insufficient to support verdicts of guilty of second degree murder and felonious child abuse. We disagree. A motion to dismiss is properly denied if there is substantial evidence of each element of the crime charged or of a lesser included offense and substantial evidence that defendant

STATE v. FRANCE

[94 N.C. App. 72 (1989)]

committed the offense. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 66, 196 S.E. 2d at 652, *quoting State v. Smith*, 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). In ruling on this motion, the trial court must consider all the evidence in the light most favorable to the State and give the State every reasonable inference which can be drawn from the evidence. *Id.* The court must consider all evidence which is admitted which is favorable to the State, but inconsistencies in the evidence are not sufficient to warrant dismissal as they are for the jury to resolve. *Id.* The test in ruling on a motion to dismiss is the same whether the evidence is direct, circumstantial or both. *Id.*

"Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E. 2d 188, 190 (1983). Intent to kill is not a necessary element of second degree murder, but there must be some intentional act which proximately causes death and is sufficient to show malice. *State v. Lang*, 309 N.C. 512, 308 S.E. 2d 317 (1983).

The felony child abuse statute relevant to this case provides:

A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child or who intentionally commits an assault upon the child which results in any serious physical injury to the child is guilty of a Class H felony.

G.S. 14-318.4(a). In *State v. Campbell*, 316 N.C. 168, 340 S.E. 2d 474 (1986), our Supreme Court held the circumstantial evidence was sufficient to survive the defendant's motion to dismiss. The evidence showed an uninjured two-year-old child was left in the sole custody and control of the defendant. A social worker testified the child was unable to put her hands more than two inches below the top edge of the bathtub. The child suffered extensive first, second and third degree burns on her hands with clear lines of demarcation from healthy skin at the wrist. A doctor testified that, although he could only guess at the length of time necessary to cause these particular burns, the child's hands would have had to have been in the water for ten to fifteen seconds to cause the type of burns the child suffered if the water was not boiling

hot. The social worker also testified to bruises on the child which would support a reasonable inference the defendant grasped the child to hold her hands under the water. *Id.* The issue is not whether the State proved the defendant intended to cause the child serious injury but whether the State showed the defendant intentionally inflicted injury which proves to be serious. *Id.*

We hold the evidence in this case was sufficient to survive defendant's motion to dismiss. The evidence showed that defendant was Moses' parent and that the child was under age 16. The evidence also showed that defendant locked the children in the apartment and unlocked the door when she returned from work. The State presented medical and scientific evidence which tended to show Moses could not have died in the manner described by defendant. The State's witness, Dr. Gable, testified Moses died from asphyxiation and not from the crushing injuries he would expect if the television set and dresser had fallen on the child as described by defendant. Dr. Gable also testified that Moses' asphyxiation could have been caused by putting Moses in the dresser drawer and closing it. Viewing the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, and despite contrary evidence presented by defendant, the evidence of second degree murder and felony child abuse is sufficient to survive defendant's motion to dismiss.

[3] Finally, defendant assigns error to the testimony of Dr. Gable, the physician performing the autopsy. Defendant objected to the following questions: "Could the death of this child have been caused by putting the child in a drawer of the chest of drawers and pushing it shut?" and ". . . do you have an opinion as to whether the death of this child was caused by having . . . the t.v. and dresser falling over on him?" Defendant contends the expert was allowed to render an opinion based on facts not in evidence or within his personal knowledge. We find no error. Our Rules of Evidence provide that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing." G.S. 8C-1, Rule 703. The facts upon which Dr. Gable based his opinion were both within his personal knowledge and admitted into evidence. Dr. Gable testified to the condition of the body during the autopsy. He also testified that he personally observed the television set, the dresser and reenactment tests performed by the Jacksonville city engineer and the police department. Dr. Gable gave his opinion

as to whether Moses' particular head and back injuries could have been caused if the television set and dresser had fallen on the child. We believe Dr. Gable had sufficient personal knowledge for his opinion regarding the cause of death.

Defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge HEDRICK and Judge WELLS concur.