An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-82

Filed: 6 October 2015

Wake County, No. 13 CRS 226535

STATE OF NORTH CAROLINA,

v.

XAVIER HACKNEY, Defendant.

Appeal by defendant from Judgment entered 29 July 2014 by Judge Thomas H. Lock in Wake County Superior Court. Heard in the Court of Appeals 12 August 2015.

*Attorney General Roy Cooper, by Assistant Attorney General Teresa L. Townsend, for the State,*

*Paul F. Herzog, for defendant.*

ELMORE, Judge.

On 29 July 2014, a jury found Xavier Hackney (defendant) guilty of: (1) conspiracy to deliver cocaine; (2) conspiracy to sell cocaine; and (3) possession with intent to sell or deliver cocaine. The trial court arrested judgment on the conspiracy to deliver cocaine count, and it entered judgment on the conspiracy to sell cocaine and possession with intent to sell or deliver cocaine counts, sentencing defendant to a

term of 15 to 27 months' imprisonment. The trial court recommended substance abuse treatment and vocational training. Defendant gave notice of appeal in open court. After careful consideration, we hold that defendant received a trial free from error.

## I. Background

On 29 October 2013, Officer Trybulski and Sergeant Hodge were attempting to serve an arrest warrant on Andre Williams, a.k.a. "Drizzy," for selling cocaine. The officers were dressed in plain-clothes and were sitting in a covert van in front of a house on Maple Street in southeast Raleigh where they believed Drizzy may be located. Alonza Foster (Foster) approached the van waiving his hand and asked Officer Trybulski who they were looking for. Officer Trybulski told Foster that they were looking for Drizzy. Foster then stated, "Drizzy's not here but I have someone else for you. Are ya'll looking for crack? Let me get in your car." Officer Trybulski did not allow Foster to get in the van but told Foster to go get him—the someone else—and he would "circle the block" and "come right back to the same spot."

Officer Trybulski and Sergeant Hodge called uniformed Officers Sirianna and Krans who were on patrol around the corner. Officer Trybulski and Sergeant Hodge drove a couple blocks off Maple Street so that the uniformed officers could get in the van to assist in detaining Foster and the "someone else," who was later identified as defendant. Officer Trybulski told the uniformed officers to "duck down" in the back

of the van, and Officer Trybulski drove back to the same spot where he met Foster. At the intersection of Boyer Street and Culver Street Officer Trybulski saw Foster and defendant walking toward the van, and Foster "began to wave his hands to signal . . . right here; we're good to go." At this point, Officer Sirianna and Officer Krans got out of the van, and defendant "turn[ed] the opposite direction and continue[d] to sprint away." Officer Krans detained Foster, and Officer Sirianna chased defendant on foot, with Officer Trybulski following behind in the van. As they were running, defendant threw a plastic bag containing a white substance into a bush before being detained. The City-County Bureau of Investigation later determined that the substance was crack cocaine.

Defendant was indicted on 27 January 2014 on three counts: conspiring to deliver cocaine; conspiring to sell cocaine; and possession with intent to sell and deliver cocaine. On 28 July 2014, defendant filed a motion *in limine* to exclude from evidence the following statements made by Foster: "Drizzy is not here, but I can get someone else for you" and "are you looking for crack." After a *voir dire* examination of Officer Trybulski, the trial court concluded that the statements were admissible under Rule 801(d)(E) "as a statement by a co-conspirator during the course of and in furtherance of the conspiracy to sell or deliver cocaine." Alternatively, assuming *arguendo* the statements were not admissible under Rule 801(d)(E), the trial court stated that they were "admissible under Rule 804, subsection (b)(3) as a statement

against the declarant's penal interest." Moreover, the trial court found that the statements were "admissible as an exception to the hearsay rule under Rule 803, subsection (3) in that they are statements of the declarant's then-existing state of mind, specifically statements concerning his intent, planning, or motive." The trial court did not acknowledge the State's additional argument that the statements were admissible for the non-hearsay purpose of showing the effect on the listeners. The trial court overruled defendant's objection and denied his motion *in limine*.

At the trial, the following colloquy took place during direct examination of Officer Trybulski:

> Q. Is there anybody you spoke with as you were looking for Drizzy?
>
> A. As we were sitting in front of the house a gentleman named Alonza Foster was walking towards us and we were kind of looking at the house where the last time we saw Drizzy was and it happened pretty quick when we got there. Mr. Foster was walking ahead of us and he's kind of waving his hand at us, and I put the window down and he says who are y'all looking for, and I said we're looking for Drizzy, and he said Drizzy's not here but I have someone else for you. Are y'all looking for crack? Just so you don't get confused, at that point in time we realized we're on a warrant service here but this guy is offering us crack cocaine not knowing we're police officers.
>
> MR. HIGH: Objection.
>
> THE COURT: Sustained.
>
> THE WITNESS: Of course we're going to take him up on that and begin a new investigation. Mr. Foster says I have

- 4 -

somebody else for you, let me get in your car.

MR. HIGH: Objection.

THE COURT: Overruled.

At the close of the State's evidence, defendant moved to dismiss for insufficient evidence. Defendant did not present any evidence and renewed his motion to dismiss. The trial court denied both motions.

## II. Analysis

A. Foster's Out-of-Court Statements

Defendant argues that Foster's statements were "inadmissible under the hearsay exceptions cited by the trial court, and/or . . . they were highly prejudicial to [defendant]." We disagree.

"When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo*." *State v. Johnson*, 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011). "Erroneous admission of hearsay, like erroneous admission of other evidence, is not always so prejudicial as to require a new trial." *State v. Sills*, 311 N.C. 370, 378, 317 S.E.2d 379, 384 (1984). "Unless such error infringes upon a criminal defendant's constitutional rights, the defendant has the burden of showing that he was prejudiced by the error and that there was a reasonable possibility that a different result would have been reached at trial if the error had not been committed." *Id.*; N.C. Gen. Stat. § 15A-1443 (2013).

Under Rule 801, "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2013). "Hearsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2013).

### 1. *Rule 801(d)(E) Co-Conspirator*

Defendant first argues that the statements were inadmissible under the co-conspirator exception contained in Rule 801(d)(E) because "[t]he record of this case is devoid of any information whatsoever that a conspiracy to possess, deliver or sell cocaine existed between Alonza Foster and [defendant] at the time Mr. Foster made the complained of statement." We disagree.

Rule 801(d) provides an exception to the rule against hearsay if the admissions were made by a party opponent. Relevant here, "A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . (E) a statement by a coconspirator of such party during the course and in furtherance of the conspiracy." N.C. Gen. Stat. § 8C-1, Rule 801(d)(E). "A criminal conspiracy is an express or implied agreement between two or more persons to do an unlawful act[.]" *State v. Barnes*, 345 N.C. 184, 216, 481 S.E.2d 44, 61 (1997) (citing *State v. Gibbs*, 335 N.C. 1, 47, 436 S.E.2d 321, 347 (1993)). "It is not necessary for the prosecution to establish the existence of the conspiracy before the admission of a hearsay statement

falling within this exception as long as the existence of the conspiracy is eventually established." *Id.* (citing *State v. Polk*, 309 N.C. 559, 565–66, 308 S.E.2d 296, 299 (1983)).

Our Supreme Court has stated, "[T]here must be a showing that (1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended." *State v. Tilley*, 292 N.C. 132, 138, 232 S.E.2d 433, 438 (1977) (citing *State v. Lee*, 277 N.C. 205, 213, 176 S.E.2d 765, 769 (1970)). Moreover, "[S]tatements of conspirators are admissible against other members of the conspiracy so long as a *prima facie* case of conspiracy is established *independently* of the statements sought to be admitted." *State v. Fink*, 92 N.C. App. 523, 530, 375 S.E.2d 303, 307 (1989) (citing *Tilley*, 292 N.C. at 138, 232 S.E.2d at 438). "Direct proof of conspiracy is rarely available, so the crime must generally be proved by circumstantial evidence." *State v. Clark*, 137 N.C. App. 90, 95, 527 S.E.2d 319, 322 (2000) (quoting *State v. Aleem*, 49 N.C. App. 359, 363, 271 S.E.2d 575, 578 (1980)). "A conspiracy 'may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.'" *Id.* (quoting *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933)). "[I]n determining the sufficiency of the evidence of conspiracy, the evidence is considered in the light most favorable to the

State." *State v. Williams*, 345 N.C. 137, 142, 478 S.E.2d 782, 784 (1996) (citing *State v. Withers*, 111 N.C. App. 340, 344, 432 S.E.2d 692, 695 (1993)). "The State's burden of proof is to produce evidence sufficient to permit the jury to find the existence of a conspiracy, but the State is not required to produce evidence sufficient to compel the jury to find a conspiracy." *Id.* (citing *State v. Morris*, 102 N.C. App. 541, 544, 402 S.E.2d 845, 847 (1991)).

Defendant argues that "if a conspiracy existed, it came into being only after Mr. Foster made the complained of statements." Further, defendant states, "[I]t is interesting to note that Officer Trybulski did not testify that he saw Mr. Foster and [defendant] talking together as they walked toward the undercover van . . . nor did he testify whether they walked side-by-side or whether one lagged behind the other."

To the contrary, the following discussion took place during direct examination of Officer Trybulski:

> Q. And Officer Trybulski, were you under the impression that the defendant was the individual that Mr. Foster went and retrieved to then sell you crack cocaine?
>
> A. Yeah. They were the only two walking together next to each other, and they were the only two walking at us.

Additionally, here, Officer Trybulski told Foster that he was looking for Drizzy, someone Officer Trybulski knew to sell cocaine. When Foster heard this, Foster asked if the undercover officers were looking for cocaine, and Foster told them he had someone for them. Moments later, Foster returned with defendant, who was carrying

cocaine, later ran from the uniformed police officers, and tried to discard the cocaine during the pursuit. Arguably, a mutual, implied understanding of a conspiracy between Foster and defendant to sell cocaine was already in place prior to Foster's conversation with Officer Trybulski or Foster would not have offered that he "had someone" for him.

Defendant goes into great detail in his brief pointing out that Officer Trybulski did not "even know [defendant] before October 29, 2013." Defendant also emphasizes that the State produced no evidence showing Officer Trybulski saw Foster and defendant together before; knew Foster and defendant were friends; saw Foster and defendant handing money to each other; saw Foster and defendant handing small bags/packages to each other; or that Foster or defendant was carrying money. The lack of such evidence, however, is not dispositive as to whether a conspiracy existed. As stated above, a conspiracy may be proved by a number of facts and circumstances showing an implied agreement, and it is not necessary to prove an express agreement evidenced by money and narcotics exchanging hands. *See Clark*, 137 N.C. App. at 95, 527 S.E.2d at 322.

Defendant cites to *State v. Stephens*, 175 N.C. App. 328, 623 S.E.2d 610 (2006), in support of his argument that if a conspiracy existed, it came into being only after Mr. Foster made the complained of statements. In *Stephens*, "Dennis Smith testified

for the State that on the night of the robbery he received a telephone call from Mr.

Loftin[.]" *Id.* at 333, 623 S.E.2d at 614. The following occurred at trial:

> Q: What did Mr. Loftin say to you when you picked up your cell phone?
>
> A: He was like, "Man, I just got robbed for five thousand dollars. Some Mexicans just robbed me."
>
> Q: And did he say anything after that?
>
> A: Yes, sir. He said, he was like, "I'm going to make me a lick." He was like, "Where Antwan at?" I was like, "He's outside in my car."
>
> Q: Now he told you he was going to go make a lick. What does that mean, to make a lick?
>
> A: Rob somebody. Rob something.

*Id.* at 333–34, 623 S.E.2d at 614. This Court concluded, "While the independent

evidence presented at trial tended to show that Mr. Loftin and Defendant conspired

to rob the Pep Mart on 22 March 2004, there is no evidence that suggests that the

conspiracy was in existence at the time Mr. Loftin made the statements to Mr.

Smith." *Id.* at 334, 623 S.E.2d at 614. The facts of this case are markedly different

than the facts in *Stephens*. In *Stephens*, the declarant-Loftin told Smith he wanted

to rob someone, and then he asked Smith if he knew where the defendant was located.

Here, the declarant-Foster asked Officer Trybulski if he was looking for crack and

then offered a supplier.

We find *State v. Morris*, 102 N.C. App. 541, 402 S.E.2d 845 (1991), to be

analogous to the case at bar. In *Morris*, the defendant argued that "the State failed to establish a *prima facie* case of conspiracy independent of [the] statements, and therefore the out-of-court statements [were] hearsay and inadmissible." *Id.* at 543, 402 S.E.2d at 846. This Court disagreed, concluding,

> The State's evidence tended to demonstrate that on 2 May 1989 defendant was parked on the side of a dirt road in a rural area at approximately 11:00 p.m. No houses or buildings were within .1 to .2 of a mile of this location. Taylor, who was accompanied by two undercover officers purchasing marijuana, pulled in behind defendant's car and parked. Taylor left his car and spoke with defendant. Defendant gestured in a hitchhiking motion toward the side of the road between the two cars. Taylor then climbed a ditch embankment in the general area where defendant had indicated and retrieved a large bag containing fifteen pounds of marijuana. Defendant fled when the undercover officers attempted to arrest him. We believe that this evidence is sufficient to establish a *prima facie* conspiracy between Taylor and defendant. Therefore the trial court did not err in admitting Taylor's out-of-court statements.

*Id.* at 544, 402 S.E.2d at 847.

Here, like in *Morris*, an implied agreement was established through defendant's own actions of carrying narcotics to the meeting site arranged by Foster. Furthermore, the evidence is considered in the light most favorable to the State, and the State need only set forth evidence sufficient to permit, not compel, the jury to find the existence of a conspiracy. *Williams*, 345 N.C. at 142, 478 S.E.2d at 784. In sum, the State established a *prima facie* case of conspiracy, the declarations were made by a party to it and in pursuance of its objectives, and while the conspiracy was active.

- 11 -

*Tilley*, 292 N.C. at 138, 232 S.E.2d at 438.

## 2. *Rule 803(3) Then Existing State of Mind*

Defendant initially states that the out-of-court statements were inadmissible pursuant to Rule 803(3). However, after reciting the rule, he then states, "While Foster's statements may have been admissible pursuant to this hearsay exception, the prejudice [defendant] suffered was extremely high . . . and Rule 403 provides for the exclusion of evidence on grounds of prejudice[.]" We disagree.

Because defendant sets forth no argument regarding Rule 803(3), we take this issue as abandoned. N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Assuming *arguendo* that defendant preserved this issue, the out-of-court statements are admissible under Rule 803(3) and need not be excluded under Rule 403.

Rule 803(3) provides:

> The following are not excluded by the hearsay rule, even
> though the declarant is available as a witness:
> . . . .
> (3) Then Existing Mental, Emotional, or Physical
> Condition.—A statement of the declarant's then existing
> state of mind, emotion, sensation, or physical condition
> (such as intent, plan, motive, design, mental feeling, pain,
> and bodily health), but not including a statement of
> memory or belief to prove the fact remembered or believed
> unless it relates to the execution, revocation, identification,
> or terms of declarant's will.

N.C. Gen. Stat. § 8C-1, Rule 803(3) (2013). Our Supreme Court has held that "Rule

803(3) allows the admission of a hearsay statement of a then-existing intent to engage in a future act." *State v. McElrath*, 322 N.C. 1, 17–18, 366 S.E.2d 442, 451 (1988). "Evidence tending to show the state of mind of the [declarant] is admissible as long as the declarant's state of mind is relevant to the case." *State v. Meekins*, 326 N.C. 689, 695, 392 S.E.2d 346, 349 (1990) (citing *State v. Cummings*, 326 N.C. 298, 313, 389 S.E.2d 66, 74 (1990)).

Here, Foster—the declarant—stated, "Drizzy's not here but I have someone else for you. Are ya'll looking for crack? I have somebody else for you, let me get in your car." The statements show Foster's intent to "engage in a future act," that is, to go get someone who has crack cocaine. *See McElrath*, 322 N.C. at 17–18, 366 S.E.2d at 451. Moreover, Foster's state of mind is relevant here because the conspiracy to sell cocaine charge involves an agreement between Foster and defendant, where Foster communicated with a potential buyer and then informed defendant, the supplier, to complete the sale. The statements show Foster's intent and plan at the time he made the statements, and thus, the trial court did not err in admitting the statements under Rule 803(3).

Additionally, defendant's argument under Rule 403 is without merit as defendant fails to address the appropriate standard. Defendant argues that "there was a likelihood, indeed a probability, that the jurors would improperly use Mr.

Foster's out-of-court statements to conclude that [defendant] was guilty." We disagree.

"The exclusion of evidence under Rule 403 is a matter left to the sound discretion of the trial judge, and we will reverse a Rule 403 decision of the trial court only when the decision is arbitrary or unsupported by reason." *State v. Brockett*, 185 N.C. App. 18, 23, 647 S.E.2d 628, 633 (2007) (citing *State v. Hyatt*, 355 N.C. 642, 662, 566 S.E.2d 61, 74 (2002)).

The standard articulated in Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2013). "'Unfair prejudice,' as used in Rule 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. France*, 94 N.C. App. 72, 76, 379 S.E.2d 701, 703 (1989) (quoting *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986)) (quotation marks omitted). "Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect. Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree." *Id.* (quoting *State v. Mercer*, 317 N.C. 87, 93–94, 343 S.E.2d 885, 889 (1986)) (quotation marks omitted).

Defendant compares the facts in his case to the facts in *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968), where he states the Supreme Court held, "[A] defendant's confrontation clause rights are violated when a non-testifying co-defendant's confession naming the defendant as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider the confession only against the defendant."

Here, however, the out-of-court statements that were admitted were not from a confession of a co-defendant. Rather, they were statements made to an undercover officer and failed to name the defendant as a participant in the crime. Although defendant contends that the jurors would improperly use the statements to find defendant guilty, there was an abundance of other evidence indicating defendant's guilt. For example: defendant was carrying crack cocaine on his person, defendant was walking to meet a potential buyer of crack cocaine, defendant fled upon seeing the police, and defendant tried to discard the crack cocaine during the pursuit. The probative value of the statements showing Foster's intent is not substantially outweighed by the danger of unfair prejudice. A "likelihood" of an improper use is not sufficient to rise to the level of prejudice contemplated in Rule 403. Therefore, defendant's argument that the trial court abused its discretion in not excluding the statements under Rule 403 is without merit. Because we conclude that the out-of-court statements were admissible for the reasons discussed above, we do not address

admissibility under Rule 804(b)(3).

B. *Ex Mero Motu* Limiting Instruction

Next, defendant argues that the trial court erred in failing to give the jury a limiting instruction *ex mero motu* regarding Foster's out-of-court statements. We disagree. Because defendant did not object at trial, we review for plain error. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012); N.C.R. App. P. 10 (a)(4).

"[T]he North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error." *Lawrence*, 365 N.C. at 516, 723 S.E.2d at 333. Our Supreme Court has stated, "plain error review should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error[.]" *Id.* at 517, 723 S.E.2d at 333. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *Id.* at 518, 723 S.E.2d at 333. "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* at 518, 723 S.E.2d at 334 (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

Moreover, "[I]t is a well recognized rule of procedure that when evidence competent for one purpose only and not for another is offered it is incumbent upon

the objecting party to request the court to restrict the consideration of the jury to that aspect of the evidence which is competent." *State v. Lankford*, 31 N.C. App. 13, 16, 228 S.E.2d 641, 643 (1976) (citing *State v. Ray*, 212 N.C. 725, 729, 194 S.E. 482, 484 (1938)). Otherwise, "[w]ithout a request therefor, defendant [i]s not entitled to a limiting instruction." *Id.*

Defendant admits that defense counsel did not make a request for a limiting instruction at trial, however, he contends that "[a] trial judge has a duty to intervene when the evidence and/or final argument is grossly improper, prejudicial, or highly inflammatory."

Here, defendant cannot meet his burden of proving plain error. The trial court's failure to give a limiting instruction to the jury, on its own motion, was not "grossly improper" or "highly inflammatory" as contemplated by the *ex mero motu* standard. "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Smith*, 294 N.C. 365, 378, 241 S.E.2d 674, 682 (1978). Here, any alleged error was not so fundamental that it had a probable impact on the jury's finding defendant guilty. Rather, there was an abundance of evidence of defendant's guilt discussed above. Thus, the trial court did not commit plain error in failing to give the jury a limiting instruction.

C. Due Process of Law

Defendant "maintains that his fundamental rights to due process of law—which included the right to confront his co-defendant, Alonza Foster—were violated in this case, and that his written motion and objection at trial invoked them." Further, defendant argues, "Essentially, the prosecution was able to inflict massive damage to the defense case without having the defense being able to respond at all. This was fundamentally unfair to [defendant.]" We disagree.

"The standard of review for questions concerning constitutional rights is de novo." *State v. Buddington*, 210 N.C. App. 252, 254, 707 S.E.2d 655, 656 (2011) (quoting *Row v. Row*, 185 N.C. App. 450, 454, 650 S.E.2d 1, 4 (2007)) (quotation marks omitted). "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2013).

The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *see also* N.C. Const. art. I, § 23 ("[E]very person charged with [a] crime has the right to . . . confront the accusers and witnesses with other testimony[.]"). The Supreme Court of the United States revised its standard for admitting hearsay evidence under the Confrontation Clause of the

Sixth Amendment, stating,

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004).

This Court has held that determining "whether a defendant's right to confrontation has been violated is a three-step process . . . [where] [w]e must determine: '(1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant.' " *State v. Allen*, 171 N.C. App. 71, 74–75, 614 S.E.2d 361, 364–65 (2005) (quoting *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (2004)).

Here, Foster's out-of-court statements were made to an undercover police officer, Officer Trybulski. At trial, the State asked Officer Trybulski if there was "any way for people to know that you and Sergeant Hodge were police officers" to which

Officer Trybulski responded, "No." Moreover, Foster on his own accord approached the undercover officers while they were sitting in their covert van and struck up a conversation. Foster's statements were not elicited as prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and the officers did not "interrogate" Foster, prompting disclosure. *See Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203.

Conversely, Foster's out-of-court statements are more akin to the nontestimonial statements in *State v. Lawson*, 173 N.C. App. 270, 619 S.E.2d 410 (2005). In *Lawson*, this Court determined that the statements at issue "were not made during any police investigation, rather they were made during a private conversation[.]" *Id.* at 276, 619 S.E.2d at 413. Further, "it was unlikely that when [the declarant] made these statements, she was thinking in terms of anything outside the scope of their private conversation—certainly not about testifying as to this matter before the court." *Id.* at 276, 619 S.E.2d at 414. Therefore, we concluded that the statements did "not fall within that category 'which the confrontation clause was directed' to protect." *Id.* (quoting *Crawford*, 541 U.S. at 50, 158 L. Ed. 2d at 192).

Here, because the out-of-court statements were nontestimonial, defendant's Sixth Amendment rights were not violated. Thus, it is unnecessary to analyze whether the declarant was unavailable and whether defendant had an opportunity for cross-examination. *See Allen*, 171 N.C. App. at 74–75, 614 S.E.2d at 364–65.

### III. Conclusion

In sum, the trial court did not err in admitting the out-of-court statements or in failing to give the jury a limiting instruction *ex mero motu*. Additionally, defendant's due process rights under the State and Federal Constitutions were not violated.

NO ERROR.

Judges CALABRIA and DILLON concur.

Report per Rule 30(e).