IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-845

Filed 4 June 2024

Catawba County, Nos. 20 CRS 3825, 51926

STATE OF NORTH CAROLINA

v.

JONATHAN RAY LAIL, Defendant.

Appeal by Defendant from judgment entered 1 November 2022 by Judge Karen Eady Williams in Catawba County Superior Court. Heard in the Court of Appeals 20 March 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorneys General Daniel P. O'Brien & Lauren M. Clemmons, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for Defendant-Appellant.*

CARPENTER, Judge.

Jonathan Ray Lail ("Defendant") appeals from judgment after a jury convicted him of two counts of each of the following: statutory rape, indecent liberties with a child, and incest with a child. On appeal, Defendant argues that the trial court: (1) abused its discretion by excluding a handwritten note (the "Note"); (2) plainly erred by admitting vouching testimony; and (3) plainly erred by admitting unreliable expert testimony. After careful review, we agree with Defendant's first argument. Because Defendant was prejudiced by the Note's exclusion, he is entitled to a new trial. So

although we agree with the dissent's analysis of Defendant's remaining arguments, we need not reach them.

## I. Factual & Procedural Background

On 5 November 2020, a Catawba County grand jury indicted Defendant for two counts each of statutory rape, indecent liberties with a child, and incest with a child. On 24 October 2022, the State began trying Defendant in Catawba County Superior Court. Trial evidence tended to show the following.

At around 4:00 a.m. on 25 April 2020, Corporal Max Priest of the Catawba County Sheriff's Office responded to a 911 call from a couple in Newton, North Carolina. The couple called 911 because an unknown girl ("Complainant") was knocking on their front door. When Corporal Priest arrived at the couple's home, Complainant was sitting on the front porch. Complainant told Corporal Priest that she was sixteen years old, that Defendant kicked her out of the house, and that she was going to see her boyfriend in Hickory, North Carolina.

Complainant lied to Corporal Priest about her age; she eventually admitted she was thirteen years old. She also lied about Defendant kicking her out of their home; she eventually admitted she was running away from home. Indeed, Complainant later said that she was "upset, angry" with Defendant because he cancelled a sleepover with her friends. Complainant lied about going to see a boyfriend in Hickory, too.

Complainant also told Corporal Priest that Defendant sexually assaulted her.

After hearing this, Corporal Priest drove Complainant to the sheriff's office, where Complainant spoke with a Department of Social Services case worker. The case worker interviewed Complainant, and Complainant alleged two instances of sexual abuse by Defendant. The case worker determined a forensic examination and interview were needed.

A forensic examination and interview, however, required Defendant's consent, so sheriff's deputies went to Defendant's home to request his consent. Defendant consented. In the meantime, the case worker took Complainant to the Child Advocacy Center.

At the Child Advocacy Center, Complainant alleged three incidents of sexual abuse by Defendant. Julia Wetmore, a pediatric nurse practitioner, examined Complainant. Nurse Wetmore found Complainant was generally healthy and cooperative, but anxious, during the examination. During the genital exam, Nurse Wetmore observed a scar on Complainant's hymen, which Nurse Wetmore associated with blunt-force trauma.

At trial, Complainant testified that Defendant sexually assaulted her multiple times. Defendant testified, too, and denied Complainant's allegations. And in order to defend himself, Defendant challenged Complainant's credibility.

Attempting to impeach Complainant on cross-examination, Defendant tried to introduce the Note and to question Complainant about it. The Note states that Complainant snuck out of her bedroom window one night to meet "Larry." From

3

Defendant's perspective, the Note was probative of two things: (1) Complainant's lack of credibility; and (2) that the perpetrator of Complainant's alleged assaults was actually Complainant's boyfriend—possibly "Larry." Importantly, the State did not object to the Note on Rule 412 grounds, likely because the Note did not disclose any sexual activity by Complainant that would trigger Rule 412 issues.[1]

Rather, the State objected to the Note for lack of relevance, lack of authentication, and lack of knowledge. During voir dire concerning the Note's admissibility, Complainant initially testified that she did not recognize the Note. Then she testified that she did not remember writing the Note. Yet despite not "recognizing" or "remembering" the Note, Complainant testified that the Note was in her handwriting.

Complainant also testified that she never met Larry in person, even though she "thought" Larry was her boyfriend when she wrote the Note. She further explained that the Note:

> might have come from a story because I used to write stories based off of people in my life[,] and I used to use people's names that were in my life to write little stories. So it could have been that or it could have been a dream I had or anything really.

---

[1] *See* N.C. Gen. Stat. § 8C-1, Rule 412 (2023) (prohibiting, generally, evidence of a victim's past sexual behavior). The dissent correctly notes that "Defendant failed to make a Rule 412(b)(2) exception . . . argument at trial." Defendant made no Rule 412 argument because the State made no Rule 412 objection. As Defendant was the party submitting the Note, it would be odd for him to insert Rule 412 into the conversation. Regardless, neither party discussed Rule 412 at trial, and neither party discussed Rule 412 on appeal.

4

Initially, the trial court made a speculation inquiry, then moved to hearsay. Specifically, the trial court was concerned about whether the Note was being offered for "the truth of the matter asserted." Here is the relevant colloquy:

> **Trial Court**: And here's my concern, the [Note] will be offered for the truth of the matter asserted therein, and granted, she was saying that's her handwriting, so that I agree with you on that.
>  . . . .
> But my point is if the document's being offered to the jury for the truth of the matter asserted therein, and that document's saying she went out her window, someone's meeting her in a car, if that's the truth of the matter asserted therein, but she's saying that's not what happened.
>  . . . .
> And so that document doesn't tell me anything besides she wrote something down. What she wrote down, the truth of what she wrote down, is at issue. It's being offered for—I can't think of a purpose other than the truth of the matter is what you're trying to get in to the jury that this is, in fact, what happened.

The trial court then engaged with how various jurisdictions handle similar documents. Then returning to the Note, the trial court held it was inadmissible. The court said:

> **Trial Court**:  So I will not allow you to admit that document for the purpose of showing anything could be remotely true in that statement because she's not going to say it. If she said yes, it happened, that would be one thing; but she's not admitting to any of that being truthful. At best it might be fanciful or fantasy of things she was just writing.

Then, almost offhandedly, the trial court said: "And I also think it's more

prejudicial than probative, and therefore I will not allow that to be admitted." Defense counsel responded: "Okay. Your Honor, for the purposes of possible appellate review, since we might start tomorrow depending on what happens . . . ." The trial court then interjected: "I doubt it but for purposes of appellate review that objection will be noted for the record." And to confirm that his objection was preserved, defense counsel reiterated: "And just for the potential appellate review I'd ask to go ahead and put this in the clerk's file for review by the Court of Appeals should it come to that." The trial court confirmed: "Definitely."

Without considering the Note or corresponding testimony, the jury convicted Defendant of all offenses. The trial court entered two judgments: one sentencing Defendant to between 556 months and 797 months of imprisonment; and another sentencing Defendant to between 240 and 348 months of imprisonment, to be served after the end of the first sentence. Defendant gave oral notice of appeal in open court.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III.    Issues

The issues on appeal are whether the trial court: (1) abused its discretion by excluding the Note; (2) plainly erred by admitting vouching testimony; and (3) plainly erred by admitting unreliable expert testimony.

## IV.    Analysis

First on appeal, Defendant argues that the trial court abused its discretion by excluding the Note, thus entitling him to a new trial. We agree with Defendant. Because Defendant's first argument entitles him to a new trial, we will not address his remaining arguments.

## A. Preservation

"No particular form is required in order to preserve the right to assert the alleged error upon appeal if the motion or objection clearly presented the alleged error to the trial court . . . ." N.C. Gen. Stat. § 8C-1, Rule 103(a)(1) (2023); *see also* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

## B. Standard of Review

We review Rule 403 rulings for abuse of discretion, which "results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Of particular relevance here, a mistake of law is an abuse of discretion. *See State v. Rhodes*, 366 N.C. 532, 535–36, 743 S.E.2d 37, 39 (2013) (citing *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047, 135 L. Ed. 2d 392, 414 (1996)); *In re S.R.*, 384 N.C. 516, 520, 886 S.E.2d 166, 171 (2023) (citing *Rhodes*, 366 N.C. at 536,

743 S.E.2d at 39) ("[A]s is always true, a mistake of law is an abuse of discretion."). In other words, a trial court acts arbitrarily when it applies an incorrect legal standard. *See Rhodes*, 366 N.C. at 535–36, 743 S.E.2d at 39. Otherwise, our abuse-of-discretion review would be a rubber stamp.

## C. Rule 403

Generally, all relevant evidence is admissible. *Matthews v. James*, 88 N.C. App. 32, 39, 362 S.E.2d 594, 599 (1987). But Rule 403 allows a trial court to exclude relevant evidence "if its probative value is *substantially outweighed* by the danger of *unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2023) (emphasis added).

"'Unfair prejudice,' as used in Rule 403, means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.'" *State v. France*, 94 N.C. App. 72, 76, 379 S.E.2d 701, 703 (1989) (quoting *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986)). "Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect." *Id*. at 76, 379 S.E.2d at 703 (quoting *State v. Mercer*, 317 N.C. 87, 93–94, 343 S.E.2d 885, 889 (1986)). Probative evidence necessarily has a prejudicial effect: "the question, then, is one of degree." *Id*. at 76, 379 S.E.2d at 703 (quoting *Mercer*, 317 N.C. at 93–94, 343 S.E.2d at 889).

The "degree" to which probative evidence is prejudicial must be "substantial."

N.C. Gen. Stat. § 8C-1, Rule 403. In other words, the "probative value must not merely be outweighed by the prejudicial effect, but *substantially outweighed*." *State v. Bush*, 164 N.C. App. 254, 264, 595 S.E.2d 715, 721 (2004) (emphasis added) (citing *State v. Lyons*, 340 N.C. 646, 669, 459 S.E.2d 770, 782 (1995)).

**D. Cross-Examination & Credibility**

North Carolina "adheres to the 'wide-open' rule of cross-examination . . . ." *State v. Penley*, 277 N.C. 704, 708, 178 S.E.2d 490, 492 (1971). Thus, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2023).

Credibility is paramount. *See State v. Whaley*, 362 N.C. 156, 161, 655 S.E.2d 388, 391 (2008). Indeed, "[w]hen testimony constitutes 'the State's sole direct evidence on the ultimate issue, . . . credibility [takes] on enhanced importance.'" *Id.* at 161, 655 S.E.2d at 391 (second alteration in original) (quoting *State v. Williams*, 330 N.C. 711, 723–24, 412 S.E.2d 359, 367 (1992)). "Moreover, 'impeachment [is] particularly critical'" when the defendant's testimony contradicts the State's. *Id.* at 161, 655 S.E.2d at 391 (alteration in original) (quoting *Williams*, 330 N.C. at 724, 412 S.E.2d at 367).

Credibility questions are for the jury—not the trial court. *See Daniels v. Hetrick*, 164 N.C. App. 197, 204, 595 S.E.2d 700, 704–05 (2004) (noting that the jury's role is to "weigh the evidence, determine the credibility of the witnesses, the probative force to be given to their testimony and determine what the evidence proved or did

9

not prove").

**E. Prejudicial Error**

An "evidentiary error does not necessitate a new trial unless the erroneous admission was prejudicial." *State v. Jacobs*, 363 N.C. 815, 825, 689 S.E.2d 859, 865 (2010) (quoting *State v. Wilkerson*, 363 N.C. 382, 415, 683 S.E.2d 174, 194 (2009)). "The same rule applies to exclusion of evidence." *Id.* at 825, 689 S.E.2d at 865. And an "[e]videntiary error is prejudicial 'when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *Id.* at 825, 689 S.E.2d at 865–66 (quoting N.C. Gen. Stat. § 15A-1443(a)).

The wrongful exclusion of impeachment evidence on cross-examination often "ha[s] 'the effect of largely depriving defendant of [his] major defense.'" *Whaley*, 362 N.C. at 161, 655 S.E.2d at 391 (quoting *Williams*, 330 N.C. at 721–22, 412 S.E.2d at 366). As a result, such an exclusion is likely prejudicial, thus entitling the defendant to a new trial. *See, e.g., id.* at 161, 655 S.E.2d at 391.

**F. Application**

First, we must address the dissent's assertion that we are limited to plain-error review. We agree with the dissent on one point: A judge's job is "to call balls and strikes and not to pitch or bat." But we disagree with the remainder of the dissent's preservation position: We are not pitching or batting simply because we disagree with the dissent's view of the strike zone.

The dissent argues that Defendant failed to object to the exclusion of the Note, and that we therefore "presume preservation." Specifically, the dissent argues that Defendant "never objected to the trial court's decision" or "called the court's attention" to Rule 403.

Defendant submitted the Note, so it would be strange for Defendant to object to his own evidence—let alone offer additional grounds for its exclusion. But in any event, we do not presume preservation. On the contrary, Defendant "clearly presented the alleged error to the trial court." *See* N.C. Gen. Stat. § 8C-1, Rule 103(a)(1).

Directly after the trial court excluded the Note on Rule 403 grounds, defense counsel responded: "Okay. Your Honor, for the purposes of possible appellate review, since we might start tomorrow depending on what happens . . . ." The trial court interjected: "for purposes of appellate review that objection will be noted for the record." Defense counsel even reiterated: "And just for the potential appellate review I'd ask to go ahead and put this in the clerk's file for review by the Court of Appeals should it come to that." The trial court confirmed: "Definitely."

Thus, Defendant "presented to the trial court a timely request" to admit the Note, and the grounds for Defendant's position were "apparent from the context." *See* N.C. R. App. P. 10(a)(1). Indeed, defense counsel's discussion of "the specific grounds for" admitting the Note spanned sixteen pages in the trial transcript. *See id.*

To find that Defendant failed to preserve his appellate arguments concerning

11

the Note would be to require what the Rules of Evidence prohibit: "No particular form is required in order to preserve the right to assert the alleged error upon appeal if the motion or objection clearly presented the alleged error to the trial court . . . ." *See* N.C. Gen. Stat. § 8C-1, Rule 103(a)(1). Defense counsel contended that the trial court erred by excluding the Note under Rule 403 and "clearly presented the alleged error to the trial court." *See id.* Therefore, this issue is preserved, and the proper standard of review is abuse of discretion. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

Here, the trial court abused its discretion by excluding the Note because it did so under the wrong legal standard. The trial court applied the wrong legal standard because: (1) it failed to engage in the requisite 403 balancing, *see France*, 94 N.C. App. at 76, 379 S.E.2d at 703; and (2) it failed to find that the Note's probative value was *substantially* outweighed by the possibility of unfair prejudice, *see Bush*, 164 N.C. App. at 264, 595 S.E.2d at 721. Thus, the trial court made a mistake of law, which was necessarily an abuse of discretion. *See Rhodes*, 366 N.C. at 535–36, 743 S.E.2d at 39.

This is a sexual-assault case, and the ultimate issue is the perpetrator's identity. Complainant testified that Defendant was the perpetrator; Defendant testified that he was not—and the only probative evidence of the perpetrator's identity is their competing testimony. So at bottom, this case is about credibility: Either Complainant told the truth, or Defendant did.

Because the State's only direct evidence of the perpetrator's identity was

Complainant's testimony, Complainant's credibility was crucial to the State's case. *See Whaley*, 362 N.C. at 161, 655 S.E.2d at 391. Thus, impeachment of Complainant's credibility was "particularly critical" to Defendant's defense in this case. *See id.* at 161, 655 S.E.2d at 391.

Accordingly, Defendant offered the Note to impeach Complainant and advised the trial judge that the Note was being offered for impeachment purposes. The Note was in Complainant's handwriting, as confirmed by her testimony, thus authenticating the Note. Yet despite not "recognizing" the Note, Complainant testified that it "might have come from a story because [she] used to write stories based off of people in [her] life[,] and [she] used to use people's names that were in [her] life to write little stories." According to Complainant, the Note could have been about "anything really." Further, Complainant "thought" Larry was her boyfriend when she wrote the Note, even though she previously testified to not having a boyfriend at the time.

The contradictions within the Note and created by the Note are highly probative of Complainant's credibility. *See id.* at 161, 655 S.E.2d at 391. These contradictions could have created a reasonable doubt concerning Defendant's guilt. Perhaps the Note contained "little stories," or maybe it detailed an actual encounter between Complainant and "Larry." Likewise, maybe Complainant's allegations against Defendant were truthful—or maybe she invented the allegations because she was "upset, angry" with Defendant. It was for the jury to decide what evidence was

believable and what weight should be assigned.

Whether Complainant was credible, and whether she fabricated her allegations against Defendant, were questions for the jury. *See Daniels*, 164 N.C. App. at 204, 595 S.E.2d at 704–05. Nonetheless, the trial court deprived Defendant of the opportunity to impeach Complainant with questions about the Note. After an extended hearsay discussion, the trial court pivoted and stated, almost as an afterthought, that it "also" thought the Note was "more prejudicial than probative," so the trial court excluded the Note under Rule 403.

As mentioned above, the trial court applied the wrong standard in two ways when it excluded the Note. *See* N.C. Gen. Stat. § 8C-1, Rule 403. First, the trial court failed to engage in Rule 403 balancing before excluding the Note. *See France*, 94 N.C. App. at 76, 379 S.E.2d at 703. Instead, as an addendum to its hearsay inquiry, the trial court uttered a fragmented Rule 403 conclusion. But as "the State's sole direct evidence" on the perpetrator's identity depended on Complainant's credibility—a careful balancing was crucial—because the Note clearly impeached Complainant's credibility. *See Whaley*, 362 N.C. at 161, 655 S.E.2d at 391. The trial court, however, did not carefully weigh the Note's prejudicial effect against its probative value, which was an error of law, *see France*, 94 N.C. App. at 76, 379 S.E.2d at 703, which was an abuse of discretion, *see Rhodes*, 366 N.C. at 535–36, 743 S.E.2d at 39.

Second, even if the trial court balanced the Note's prejudicial effect against its probative value, the court used the wrong scale in doing so. *See* N.C. Gen. Stat. § 8C-

14

1, Rule 403. The standard for excluding evidence under Rule 403 is not merely "more prejudicial than probative," as stated by the trial court. *See id.* Instead, the proper question is whether the probative value is *substantially* outweighed by the possibility of unfair prejudice. *See id.*; *Bush*, 164 N.C. App. at 264, 595 S.E.2d at 721 ("[The] probative value must not merely be outweighed by the prejudicial effect, but *substantially outweighed*." (emphasis added)). So even if the trial court engaged in careful balancing, its conclusion was still based on a mistake of law, N.C. Gen. Stat. § 8C-1, Rule 403, and was therefore an abuse of discretion, *see Rhodes*, 366 N.C. at 535–36, 743 S.E.2d at 39.

Trial courts must have room to make discretionary decisions, but they must do so within the bounds of applicable legal standards. *See id.* at 535–36, 743 S.E.2d at 39. Accordingly, the trial court abused its discretion by excluding the Note because it failed to stay within the bounds of Rule 403. *See* N.C. Gen. Stat. § 8C-1, Rule 403; *Rhodes*, 366 N.C. at 535–36, 743 S.E.2d at 39.

Lastly, the trial court's exclusion of the Note prejudiced Defendant. *See Jacobs*, 363 N.C. at 825, 689 S.E.2d at 865. Complainant's credibility was a critical question—and that question was for the jury—not the trial court. *See Daniels*, 164 N.C. App. at 204, 595 S.E.2d at 704–05. The trial court's exclusion was prejudicial because there "is a reasonable possibility" that if the jury considered the Note, the jury would have believed Defendant, rather than Complainant. *See Jacobs*, 363 N.C. at 825, 689 S.E.2d at 865–66.

In other words, there "is a reasonable possibility" that the jury would have found Defendant not guilty if the jury had been allowed to consider the Note. Therefore, Defendant is entitled to a new trial. *See, e.g., Whaley*, 362 N.C. at 161, 655 S.E.2d at 391.

## V. Conclusion

We hold that the trial court abused its discretion by excluding the Note, and Defendant was prejudiced by the exclusion. Defendant is therefore entitled to a new trial. Although we agree with the dissent's analysis of Defendant's remaining appellate arguments, we need not reach them because Defendant's first argument entitles him to a new trial.

NEW TRIAL.

Judge STADING concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge, dissenting.

The majority opinion's analysis erroneously applies an inappropriate and improper standard of review to award a new trial. Defendant failed to express the specific reasons why the evidence should be admitted under Rule 403. The proper standard of review of these issues is plain error. Presuming Defendant properly preserved his objection, Defendant has failed to show any abuse of discretion in the trial court's ruling to exclude admission of the Note or to show prejudice to be entitled to a new trial.

Other witnesses and wide-ranging and properly admitted evidence impeached the prosecuting witness's credibility. Defendant has failed to demonstrate plain error, abuse of discretion, prejudice, or to show the jury would have reached a different result, but for the trial court's ruling. I respectfully dissent.

## I. Background

Catawba County Sheriff's Corporal Max Priest ("Corporal Priest") was dispatched and responded to a 911 call from a couple, reporting a young girl ("Complainant") knocking on their door in the early morning hours on 25 April 2020. Corporal Priest responded after 4:00 a.m. Upon arrival, Complainant asserted to Corporal Priest she was 16 years old and was enroute to see her boyfriend in Hickory.

Corporal Priest determined this information was false, because of the incorrect birthdate Complainant had provided. When challenged, Complainant admitted she was a 13-year-old runaway. Corporal Priest told her he needed to contact a parent

or guardian. While sitting in the deputy's car, Complainant asserted she had been sexually assaulted by her father. Corporal Priest did not personally question Complainant about her allegations, and, per protocol, drove her to the Sheriff's Department, where she met and spoke with a Catawba County Department of Social Services ("DSS") case worker.

The DSS case worker conducted a recorded interview of Complainant, during which she alleged two specific instances of purported sexual abuse by her father. Based upon this information, the DSS case worker determined a forensic examination and interview was needed. To conduct this examination and interview, DSS and Deputies needed Defendant's parental consent and went to his residence to obtain it. Defendant was told the consent forms were needed for a physical examination of his minor daughter, who had asserted inappropriate sexual contact. Defendant initially hesitated, but he signed the forms. Complainant was taken to the Child Advocacy Center ("CAC").

CAC conducts forensic interviews for children, who may have experienced sexual or physical abuse, or who have witnessed violence. CAC also performs child medical examinations, therapy, and victim advocacy. The CAC interviewer, Adrienne Opdyke ("Opdyke"), used North Carolina's interview protocol, Recognizing Abuse Disclosures and Responding ("RADAR") to provide a structured environment for Complainant to assert her account in a juvenile-led manner.

During the CAC interview, Complainant alleged three specific incidents of

purported sexual abuse by her father. The alleged incidents spanned four years and purportedly occurred at multiple residences. Later that day, Julia Wetmore, a pediatric nurse practitioner ("Nurse Wetmore"), performed a child medical examination of Complainant. Nurse Wetmore followed established "Best Practices" and the general guidelines of the Child Medical Evaluation Program ("CMEP"), including a head-to-toe, external, and internal genitalia examination. Nurse Wetmore found Complainant was anxious, but generally healthy and cooperative. Nurse Wetmore observed a scar on Complainant's hymen during the internal genital examination, which she asserted may be associated with blunt force trauma.

Following the CAC interview and medical examinations, Catawba County Sheriff's Deputy Yang called Defendant and asked to interview him. Defendant asked if he was in trouble, but he voluntarily arrived at the Sheriff's office later that afternoon and was arrested.

The Catawba County Grand Jury indicted Defendant for rape of a child by an adult, statutory rape, two counts of indecent liberties with a child, and two counts of incest on 2 November 2020. A jury trial commenced on 24 October 2022. The jury convicted Defendant of all six offenses on 1 November 2022.

Defendant was sentenced to the following consecutive sentences: 300 to 420 months imprisonment for statutory rape; 16 to 29 months imprisonment for indecent liberties; 240 to 348 months imprisonment for incest; and, an additional 240 to 348 months imprisonment for statutory rape.

For the remaining indecent liberties and incest charges, Defendant was sentenced at 16 to 29 months and 240 to 348 months imprisonment respectively, consolidated with the first count of each of these charges. Defendant entered oral notice of appeal in open court.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. Issues

Defendant argues, and the majority's opinion agrees, the trial court prejudicially erred as a matter of law and *ipso facto* abused its discretion in limiting admission of a Note in Complainant's handwriting. Defendant asserts his cross-examination of Complainant was unlawfully limited on a matter assertedly relevant to the Complainant's credibility. Under this notion, the majority's opinion presumes prejudice and concludes Defendant is entitled to a new trial on all issues.

Defendant further argues the trial court plainly erred in permitting expert testimony, which improperly vouched for Complainant's credibility. Defendant also argues the trial court plainly erred by allowing expert testimony that violated Rule 702(a)(3). *See* N.C. Gen. Stat. § 8C-1, Rule 702(a)(3) (2023). The majority's opinion agrees the latter two issues, both of which are analyzed below, are without merit.

## IV. Cross-Examination

Defendant first argues the trial court prejudicially erred as a matter of law and

consequently abused its discretion by excluding a Note written by the Complainant from the jury. He also argues, for the first time on appeal, the trial court erred as a matter of law and abused its discretion by applying the improper standard under Rule 403 of the North Carolina Rules of Evidence. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2023).

## A. Standard of Review

The majority's opinion incorrectly asserts the standard of review on the first issue is an error of law, which equals an abuse of discretion. This Court reviews *preserved* Rule 403 objection rulings for an abuse of discretion. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Defendant, however, failed to "stat[e] the specific grounds for the ruling [he] desired the court to make" and "obtain a ruling" on the applicability of Rule 403 at trial when cross-examining Complainant on the contents of the Note. N.C. R. App. P. 10(a)(1).

To preserve an argument for appellate review, "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." *Id.* The complaining party must also "obtain a ruling." *Id.* "The purpose of the rule is to require a party to call the court's attention to a matter upon which he or she wants a ruling before he or she can [argue] error to the matter on appeal." *State v. Canady*, 330 N.C. 398, 401, 410 S.E.2d 875, 878 (1991) (citations omitted).

"Unpreserved error in criminal cases . . . is reviewed only for plain error" and "plain error review in North Carolina is normally limited to instructional and evidentiary error." *State v. Lawrence*, 365 N.C. 506, 512-16, 723 S.E.2d 326, 330-33 (2012) (citations omitted)).

Plain error "is always to be applied cautiously" and is defined as:

> a *fundamental* error, something *so basic, so prejudicial*, so lacking in its elements that *justice cannot have been done*, or where the error is *grave error* which amounts to a denial of a fundamental right of the accused, or the error has resulted in a *miscarriage of justice* or in the denial to appellant of a fair trial[,] or where the error is such as to seriously affect the fairness, integrity[,] or public reputation of judicial proceedings[,] or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (emphasis supplied) (citations, quotation marks, and alterations omitted).

"To show that an error was fundamental, a defendant must establish prejudice." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. Defendant has failed to "specifically and distinctly" argue this newly-found Rule 403 appellate argument, has waived review of his argument, and is not entitled to plain error review. N.C. R. App. P. 10(a)(4). Our appellate rules require a defendant to "specifically and distinctly contend[ ]" the contested action amounted to plain error. *Id.*

To establish prejudice required for a new trial "[u]nder the plain error rule, defendant must convince this Court not only that there was error, but that absent

the error, *the jury probably would have reached a different result.*" *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (emphasis supplied) (citation omitted). Defendant clearly failed to do so here.

"Our courts have held . . . the balancing test of Rule 403 is reviewed by this court for abuse of discretion, and we do not apply plain error to issues which fall within the realm of the trial court's discretion." *State v. Garcia*, 228 N.C. App. 89, 101-02, 743 S.E.2d 74, 82 (2013) (citations, internal quotation marks, and alterations omitted).

Here, the State objected to admission of the Note on the grounds of relevancy, authentication, and lack of knowledge. Defendant proffered the Note and argued it attacked Complainant's credibility and could be used to impeach Complainant. The trial court heard Defendant's argument for admission of the Note to challenge Complainant's credibility, and it also expressed concerns over speculation and hearsay. When the trial court ruled Defendant was prohibited from questioning Complainant about the contents of the Note, the trial court stated Defendant's blanket objection to the exclusion of the Note was "noted for the record."

On appeal, Defendant argues the trial court's offhanded comment at the end of an extensive discussion constitutes proper preservation for appellate review. The majority's opinion agrees and holds Defendant's blanket objection preserved his argument.

During the lengthy discussions about whether to admit or publish the Note,

7

Defendant never: (1) objected to the trial court's decision on Constitutional grounds; (2) challenged the trial court's concerns over confusion of the issues to the jury; or (3) proffered how the trial court should weigh the probative value of the Note compared to prejudicial effects under Rule 403.

Defendant failed to "stat[e] the specific grounds for the ruling [he] desired the court to make" under Rule 403 when cross-examining Complainant on the contents of the Note. N.C. R. App. P. 10(a)(1). Defendant failed to "call the court's attention" on an issue he "want[ed] a ruling" on which is required to "assign error to the matter on appeal." *Canady*, 330 N.C. at 401, 410 S.E.2d at 878 (citations omitted).

Instead, Defendant attempts to "swap" his horse for a purportedly "better mount", raises his Rule 403 objection for the *first time* on appeal, and only argues the trial court abused its discretion. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount . . . .").

Defendant has also failed to "specifically and distinctly" allege the trial court committed *plain error* by exercising its discretion and excluding the Note under Rule 403. N.C. R. App. P. 10(a)(4). *See State v. Woodley*, 286 N.C. App. 450, 464, 880 S.E.2d 740, 750 (2022); *State v. Smith*, 269 N.C. App. 100, 105, 837 S.E.2d 166, 169 (2019).

Defendant's new argument is unpreserved. The majority's opinion: (1)

8

presumes proper preservation and objection; (2) then elevates and reviews Defendant's argument as an error of law as equaling an abuse of discretion; (3) erroneously awards a new trial without; (4) any required demonstration of prejudice. *Id.*; *Garcia*, 228 N.C. App. at 101-02, 743 S.E.2d at 82.

"[I]t's [the judge's] job to call balls and strikes and not to pitch or bat." Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States: Hearing Before the Committee on the Judiciary United States Senate, 109 Cong. 56 (Statement of Hon. John G. Roberts, Jr.).

### B. Analysis

Presuming, *arguendo*, Defendant had properly objected to and preserved the exclusion of the Note under Rule 403 at trial, and the Appellate Rules allowed this Court to review his claim for an abuse of discretion, Defendant's argument still fails.

Defendant argues the trial court abused its discretion by denying Defendant from admitting and publishing a Note in Complainant's handwriting. The Note was written at some unknown point prior to Complainant running away from home. Defendant argues the trial court's ruling unlawfully limited his trial counsel's cross-examination of Complainant.

The Note referenced "Larry", an alleged online boyfriend, who Complainant purportedly had snuck out of her house to visit. The Note, written on lined, notebook-like paper, reads: " 'Hey, get in.' I looked out my open window to see my boyfriend Larry in his car. 'Okay. I'm coming. But be quiet. Jackie's asleep.' He nodded as I

9

crawled out my window. I quickly got in his car."

The trial court concluded the Note appeared to be a fantasy, opposed to a recorded diary entry, as evidenced by the informal language and direct quotation marks. The Note is written in past tense and was found in the home, to which Complainant never returned after complaining of Defendant's actions to law enforcement officers. Complainant never returned to the house to author a diary entry describing the evening. No foundation was laid showing the Note described Complainant's actions immediately prior to the early-morning intervention by law enforcement officers.

Defendant's counsel attempted to use the Note to impeach the Complainant on cross-examination. Defendant proffered the online boyfriend referenced in the Note, named Larry, *may have been* the same boyfriend she first stated she was going to visit in Hickory after running away from Defendant. The court excused the jury and allowed defense counsel and the State to conduct a *voir dire* of Complainant. Defendant asked Complainant if she recognized the Note, to which Complainant responded she did not.

> Q: I'd like to show you what's been marked as Defendant's Exhibit Number 1 for identification. Do you recognize that?
>
> A: No.
>
> Q: Okay. Are you saying you did not write this?
>
> A: No, I just do not – I don't recognize it.

10

Complainant admitted the Note was in her handwriting, but she did not remember it.

> Q: Is that your handwriting?
>
> A: Yes, it is.
>
> Q: So you did write it you just don't remember writing it?
>
> A: Yes.

Complainant went on to explain she had met "Larry" online and had never met him in-person. She admits she "thought" Larry was her boyfriend at the time she wrote the Note, when she was younger. She repeatedly stated she had never snuck out of her house to meet "Larry" and emphasized the events detailed in the Note were fictious. She explained she used to "write stories based off of people in [her] life" or that it could have been based on a dream. For more context, Defendant's counsel asked Complainant the following questions:

> Q: But in that note it says you talk about, I think, crawling out a window and meeting him; right?
>
> A: Yes.
>
> Q: Okay. And it's written in the past tense. Did that happen?
>
> A: No.
>
> Q: Okay. So was that from a diary entry or do you know where that came from?
>
> A: It might have come from a story because I used to write

11

stories based off of people in my life and I used to use people's names that were in my life to write little stories. So it could have been that or it could have been a dream I had or anything really.

Q: But the way it's written it could have actually happened; right?

A: It didn't.

Q: Okay. But it could have; right?

[THE STATE]: I'm going to object. She asked and answered.

THE COURT: Sustained.

[DEFENDANT'S COUNSEL]: So this Larry person you're in contact with, he was 17?

A: I don't really know how old he was. He had told me he was 17 but I'm not sure.

Q: Okay. And when you're talking with Officer Priest you mention going to see your boyfriend in Hickory; is that right?

A: Yes.

Q: Was that Larry?

A: No.

Q: Okay. So you're saying you never met Larry in person?

A: No. No, I said I never met Larry in person.

Q: Yeah, sorry, that was a bad question on my part. Thank you for clarifying.

Before Defendant's *voir dire* of Complainant began, the State had objected to

the writing being admitted and published on the grounds of relevancy, authentication, and lack of knowledge. After the *voir dire,* the trial court expressed its concerns on the record about relevancy, speculation, as well as the Note being hearsay and being presented for the truth of the matter asserted.

The trial court exchanged several colloquies with counsel before reaching its decision:

> THE COURT: But the context behind what prompted her or provoked her to write this was missing. Is she writing that because she's writing what happened in a dream; is she writing that because it's some story she's writing or is she writing this because that's what really happened. She's saying she never met this man – or met this kid Larry and he might be 17 and that's what he portrayed himself to be online. She said she really doesn't even know how old he is. She's never met him face to face.
>
> And so that document doesn't tell me anything besides she wrote something down. What she wrote down, the truth of what she wrote down, is at issue. It's being offered for – I can't think of a purpose other than the truth of the matter is what you're trying to get in to the jury that this is, in fact, what happened. That is not, in fact, what happened based on what she's saying.
>
> So how do you impeach her by something that she's saying never happened. I mean, what you're trying to say [is] it did happen but she's never said it happened and how do you impeach her when there's not a witness to that.

The trial court made the following ruling at the end of its extensive colloquies with Defendant about admitting the Note to purportedly impeach Complainant's credibility. At the end of it's ruling, the trial court "offhandedly" mentioned the Rule 403 balancing test:

13

> So I will not allow you to admit that document *for the purpose of showing anything could be remotely true in that statement because she's not going to say it.* If she said yes, it happened, that would be one thing; but she's not admitting to any of that being truthful. At best it might be fanciful or fantasy of things she was just writing. And I also think it's more prejudicial than probative and therefore I will not allow that to be admitted. At best she's acknowledged that it's her handwriting but beyond that there's nothing of evidentiary value in that document.

(emphasis supplied).

### 1. *Rule 412*

The majority's opinion correctly notes, "neither party discussed Rule 412 at trial, and neither party discussed Rule 412 on appeal." Yet the majority addresses Rule 412 on appeal and asserts Rule 412's limitations were not at issue. This assertion directly contradicts the majority's acknowledgement of the reasons for which Defendant intended to use the Note. *See* N.C. Gen. Stat. § 8C-1, Rule 412 (2023).

The majority's opinion states, the Note was "probative" because it could prove "the perpetrator of Complainant's alleged [sexual] assaults was actually Complainant's boyfriend—possibly 'Larry.'" The majority's opinion then posits: "the Note did not disclose any sexual activity by Complainant that would trigger Rule 412 issues." Later, the majority's opinion insinuates the sexual perpetrator may have been "Larry", "because the Note clearly impeached Complainant's credibility" regarding the "perpetrator's identity."

14

If Defendant had attempted to argue the Note showed someone other than Defendant had scarred Complainant's hymen or otherwise "was the perpetrator of Complainant's alleged assaults," Rule 412 would apply. *See* N.C. Gen. Stat. § 8C-1, Rule 412(b)(2) (explaining "evidence of specific instances of sexual behavior [may be] offered for the [limited] purpose of showing that the act or acts charged were not committed by the defendant"). For the Note to be used to call into question the identity of the perpetrator, Defendant would have been required to proffer evidence tending to show: Complainant had sexual encounters with Larry, those sexual encounters were nonconsensual, and the instances of sexual misconducts Defendant was accused of were committed by Larry instead of Defendant. *Id.*

Given the utter dearth of anything tending to show Complainant had ever met "Larry" in-person, much less had an unlawful and non-consensual sexual encounter with "Larry", the trial court exercised its discretion and properly concluded the Note was not relevant nor probative of whether an alternative perpetrator existed, or who had committed the sexual misconduct of which Defendant was accused.

If the Note was probative of an alternative perpetrator, as the majority's opinion posits, the evidence required to suggest "Larry" committed the sexual acts, as opposed to Defendant, would have clearly fallen under the purview of Rule 412(b)(2). *Id.* Defendant failed to make a Rule 412(b)(2) exception or argument at trial, because no other evidence tended to show any purported sexual activity between Complainant and "Larry."

## 2. *Scope of Cross-Examination*

"The long-standing rule in this jurisdiction is that the scope of cross-examination is largely within the discretion of the trial judge, and his rulings thereon will not be held in error in the absence of a showing that the *verdict was improperly influenced* by the limited scope of the cross-examination." *State v. Woods*, 307 N.C. 213, 220-21, 297 S.E.2d 574, 579 (1982) (emphasis supplied). "Although cross-examination is a matter of right, the *scope* of cross-examination is subject to appropriate control in the *sound discretion of the court*." *State v. Kowalski*, 270 N.C. App. 121, 126, 839 S.E.2d 443, 447 (2020) (emphasis supplied) (citation omitted).

Our Rules of Evidence generally allow a witness to be "cross-examined on any matter *relevant* to any issue in the case, including credibility." N.C. Gen. Stat. § 8C-1, Rule 611(b) (2023) (emphasis supplied). *See also* N.C. Gen. Stat. § 8C-1, Rule 401 (2023). Notwithstanding a threshold showing of relevancy, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues, or misleading the jury*, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (emphasis supplied).

"In our [appellate] review, we consider not whether we might disagree with the trial court [if we were sitting in that role], but whether the trial court's actions are fairly supported by the record." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008) (citation and quotation marks omitted).

16

*Tyson, J., dissenting.*

As the majority's opinion points out, Complainant's testimony and credibility was challenged and impeached on several occasions.  The majority's opinion asserts Complainant had lied about: her age; her father kicking her out of the home, when she instead had run away from home; and, her claiming she intended to meet a boyfriend in Hickory who did not exist.  Complainant was cross-examined regarding these lies.  Corporal Priest was also cross-examined by Defendant regarding these inconsistences in Complainant's statements.

Defendant's ability to extensively cross-examine Corporal Priest and Complainant regarding these lies and her credibility cuts against the majority's notion asserting Defendant's inability to admit and publish the Note prejudicially limited his defense.

The trial court allowed and the jury heard lengthy evidence and testimony attacking Complainant's veracity, *yet the jury still believed her on all counts*. Defendant has failed to demonstrate the jury's "verdict was improperly influenced by the limited scope of the cross-examination" to show prejudice to award a new trial. *Woods*, 307 N.C. at 221, 297 S.E.2d at 579.

Defendant has also failed to demonstrate the trial court abused its discretion by "offhandedly" misstating the standard as "more prejudicial than probative" under Rule 403, which only allows relevant evidence to be excluded if the "probative value is substantially outweighed by" any prejudicial effects.  N.C. Gen. Stat. § 8C-1, Rule 403.  Defendant never demonstrated to the trial court how to weigh the probative

value of the Note compared to any "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" under the Rule 403 balancing test. *Id.*

The trial court allowed both counsel to *voir dire* the witness and engaged in extensive discussions with both counsel about the proffered evidence, which encompasses nearly sixteen pages of text in the transcript. Under Rule 403, "confusion of the issues, or misleading the jury" are valid bases in the trial court's discretion to limit extraneous assertions, which the trial court discussed. *Id.*

The trial judge's comments do not indicate an abusive or careless application of the law. Instead, the transcript clearly shows careful and reasoned consideration of Defendant's arguments for the Note to be admitted, the relevancy of the Note, whether the Note was being offered for the truth of the matter asserted, concerns about speculation, and the risk of the Note confusing the issues and misleading the jury. *See* N.C. Gen. Stat. § 8C-1, Rules 401, 402, 403, 602, and 801(c) (2023)

The trial court lamented:

> THE COURT: I think that's the only fact that you have is that she wrote it. . . . And so to say here's a document, you-all go figure out what you think this means without anything else, isn't that pure speculation? If she won't say that that's what it is, how can I put that before a jury and ask them to read into [it] however you want to what this means?

The trial court further questioned Defendant's counsel regarding how the Note could be linked to the night Complainant left the house or whether her alleged

boyfriend in Hickory could, in fact, be the "Larry" in the Note. Both the State and Defendant admitted Complainant never returned to the house and the Note could not concern the night she had ran away from her house. The trial court stated:

> But how could the document say that she went out a window and met someone before she had a chance to write it and put in the house. You're saying she wrote something that says she crawled out the window and met Larry, but if she's located by the police that same night, when would she have had an opportunity to write down this and go back and put it in the house?

The trial court's statements show careful and reasoned examination of the Note, and how it may be used by the jury to avoid "confusion of the issues, or misleading the jury." N.C. Gen. Stat. § 8C-1, Rule 403. *See State v. Steele*, 260 N.C. App. 315, 322, 817 S.E.2d 487, 493 (2018) ("Further, the trial court's limiting instruction demonstrated that the trial court thoughtfully considered the nature of the testimony and how it could potentially be used by the jury. Defendant has failed to demonstrate that the trial court abused its discretion.").

Presuming, *arguendo,* the issue was preserved and is properly before this Court, Defendant has failed to show: the trial court abused its discretion, prejudice, or how the jury's verdict would have been influenced by the limited scope of cross-examination to be awarded a new trial. *Id.*; *Kowalski*, 270 N.C. App. at 126, 839 S.E.2d at 447; *Woods*, 307 N.C. at 220-21, 297 S.E.2d at 579.

Defendant has also failed to demonstrate the trial court acted unreasonably or reached an arbitrary decision, that is not the product of a reasoned decision, while

conducting its purported Rule 403 analysis. N.C. Gen. Stat. § 8C-1, Rule 403; *Steele*, 260 N.C. App. at 322, 817 S.E.2d at 493. Defendant's argument is properly overruled.

## V.    Expert Testimony

## A. Standard of Review

When a defendant fails to properly preserve an issue for appellate review with a timely request, objection, or motion to the trial court, the error may still be reviewed for plain error, if it concerns the admission of evidence including expert testimony. *See State v. Hammett*, 182 N.C. App. 316, 320, 642 S.E.2d 454, 457 (2007). *See also State v. Koiyan*, 270 N.C. App. 792, 794, 841 S.E.2d 351, 353 (2020).

As noted earlier, plain error review leading to a conclusion to award a new trial only applies "in *extraordinary cases* where, after reviewing the *entire record*, it can be said the claimed error is a *fundamental error*, something *so basic, so prejudicial*, so lacking in its elements that *justice cannot have been done*." *State v. Barden*, 356 N.C. 316, 348, 572 S.E.2d 108, 130 (2002) (emphasis supplied) (citation and internal quotation marks omitted).

Defendant must meet and carry a significantly heavier burden than that placed upon a defendant who preserved their objection *via* timely objection at trial. "To establish plain error, a defendant must demonstrate (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *Hammett*, 182 N.C. App. at 320, 642 S.E.2d at 457 (citation and quotation marks omitted).

Defendant's arguments fail under either standard.

## B. Vouching

Defendant argues the testimony of the CAC forensic interviewer, Opdyke, effectively stamped credibility on Complainant's testimony. The testimony in question occurred when Opdyke was explaining the process and purpose of interviewing Complainant. Opdyke states the purpose is "to elicit the account in credible details" and following the protocols are necessary or the interview "probably [will not] stand up in court."

This Court has previously held that experts may not testify that "a prosecuting witness is believable, credible, or telling the truth." *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988). The question of whether testimony is improper vouching for a witness must be decided on a fact-specific basis. *State v. Chandler*, 364 N.C. 313, 318-19, 697 S.E.2d 327, 331 (2010).

This Court has previously deemed expert testimony to be improper when no clinical or physical evidence supports a statement that is presented as fact by the expert, or when the expert vouches for a victim by sharing their belief in the veracity of the victim's statements. *See State v. Bush,* 164 N.C. App. 254, 259-60, 595 S.E.2d 715, 718-19 (2004) (allowing expert to testify to abuse occurred with no evidence and expressing an opinion of child's recollection was not permissible); *Hammett,* 361 N.C. at 97, 637 S.E.2d at 522 (allowing expert to state she believed the victim even without physical evidence was improper).

Opdyke did not testify Complainant's accusations were credible. Opdyke refrained from citing anything Complainant had asserted as being factual and did not vouch for Complainant's credibility. The statements at issue were made during a general overview of how and why forensic interviews are used.

When speaking about Complainant's interview, Opdyke used phrases such as "specific details" or just "details" and only noted Complainant had reported several incidents of sexual abuse. Opdyke did not opine on how she had viewed these statements, the veracity of those statements, or that she made any judgment. Opdyke noted Complainant had alleged sexual abuses occurred.

In light of these facts, and viewing the entire record for plain error, excluding Opdyke's testimony does not show the jury would probably have reached a different verdict. The jury heard Complainant's testimony, reports to authorities, testimony describing Complainant's demeanor when discussing the sexual abuse, physical evidence of sexual abuse, her testimony regarding Defendant's behavior surrounding the report stage, and his subsequent arrest.

The plain error rule "is always to be applied cautiously and only in the exceptional case." *See State v. Cummings*, 352 N.C. 600, 616, 536 S.E.2d 36, 49 (2000). This is not such an "exceptional case." *Id*. Defendant did not object and has failed to show plain error in the admission of Opdyke's expert testimony to warrant a new trial.

### C. Reliable Principles and Methods

Defendant's final argument asserts the trial court again committed plain error when it allowed Nurse Wetmore to testify she had conducted a physical examination in accordance with CMEP guidelines and had formed an opinion based upon these guidelines, but she failed to explicitly detail the guidelines in relation to her findings. Defendant made no objection at trial. Defendant now argues Nurse Wetmore's expert opinion of the Complainant's injury she observed lent credibility to Complainant's allegations of sexual abuse and the jury would have returned a different verdict without her testimony.

Defendant relies upon Rule 702(a), which provides an expert witness may testify in the form of an opinion "if all of the following apply: (1) [t]he testimony is based upon sufficient facts or data[,] (2)[t]he testimony is the product of reliable principles and methods[,] (3) [t]he witness has applied the principles and methods reliably to the facts of the case." N.C. Gen. Stat. § 8C-1, Rule 702(a). Defendant focuses on the third prong of the statute. Under Rule 702(a)(3), the expert's methodology or reasoning must be sufficiently tied to the facts. *Id.*; *State v. Babich,* 252 N.C. App. 165, 168, 797 S.E.2d 359, 362 (2017) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 593 (1993)).

The expert witness must tie the facts to the methodology to ensure no "analytical gap between the data and the opinion proffered." *State v. McPhaul*, 256 N.C. App. 303, 313-17, 808 S.E.2d 294, 303-05 (2017). The expert also must provide details showing how she had "arrived at her actual conclusions *in this case.*" *Id.* at

23

316, 808 S.E.2d at 305 (explaining expert opinion was unreliable and inadmissible because the expert failed to explain to the jury how she knew the fingerprints matched).

Nurse Wetmore explained the guidelines for child medical evaluations in sexual abuse cases and the process of the evaluations. She testified about conducting the medical examination on Complainant and explained the scar on Complainant's hymen. She concluded, in her expert opinion, Complainant's injury was consistent with blunt force trauma and the potential of sexual assault or abuse. Nurse Wetmore testified she had documented the results of the examination and had reached this opinion based upon CMEP guidelines.

Defendant questioned Nurse Wetmore regarding these guidelines during a *voir dire*, which centered around a medical examination conducted on Complainant in 2009 following a report of sexual assault to DSS. Complainant was three years old when the 2009 medical examination was completed. Defendant's counsel pressed Nurse Wetmore for a detailed explanation of the guidelines, and the prosecution also elicited additional testimony on the guidelines. Defendant had the unrestrained opportunity to cross-examine Nurse Wetmore regarding the CMEP guidelines, and he chose not to object or challenge her opinion or to question her further before the jury.

Nurse Wetmore did not ask the jury to simply accept her conclusion. She explained she had used nationally-recognized guidelines and how she had compared

her findings during the examination with these guidelines. She further detailed how she had documented her opinion and had based it upon the guidelines. She demonstrated to the jury where the physical injury was found by using a photograph taken during the examination.

She also explained the statistical probability of finding this sort of injury on a child alleging sexual abuse. Taken together, no gap existed between how Nurse Wetmore had analyzed the information she had observed during the examination and how she had reached her conclusion. Defendant failed to show any "analytical gap between the data and the opinion proffered." *McPhaul*, 256 N.C. App. at 313-17, 808 S.E.2d at 303-05.

Under plain error review, Defendant fails to show fundamental error resulting in the miscarriage of justice, or which would have probably resulted in the jury reaching a different verdict. *See Barden,* 356 N.C. at 348, 572 S.E.2d at 130; *Hammett,* 182 N.C. App. at 320, 642 S.E.2d at 457. This argument is properly overruled.

## VI. Conclusion

Defendant's Rule 403 argument was not asserted or preserved for appellate review. Defendant engaged in extensive cross-examination of the Complainant and the investigating officer and called into question Complainant's inconsistent statement and credibility before the jury. The trial court did not abuse its discretion by excluding the written Note from the jury. The trial court's un-objected admission

25

*Tyson, J., dissenting.*

of testimony by Opdyke and/or Nurse Wetmore was not plain error.

Defendant received a fair trial, free from abuses of discretion and prejudicial errors he preserved or argued. No plain error is shown in the jury's verdicts or in the judgments entered thereon. Defendant is not entitled to a new trial. I respectfully dissent.